**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON**

CRIMINAL ACTION NO.  6:11-cr-51-S-GFVT-CJS
CIVIL ACTION NO. 6:14-cv-7338-GFVT-CJS

UNITED STATES OF AMERICA                                                                    PLAINTIFF

v.                        **REPORT AND RECOMMENDATION**

ROBERT JASON CHAPMAN                                                                      DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \* \*

On February 27, 2014, Defendant Robert Jason Chapman filed a *pro se* Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255.  (R.798).  On April 16, 2014, the United States filed its Response (R. 828), to which Defendant filed a Reply (R. 846).  Having all relevant documents before the Court, the matter is now ripe for consideration and preparation of a Report and Recommendation.  28 U.S.C. § 636(b).  For the reasons stated below, it will be recommended that Defendant's Motion to Vacate, Set Aside, or Correct Sentence (R. 798) be **denied.**

I.      **RELEVANT FACTS**

On August 11, 2011, a federal grand jury returned an Indictment charging Defendant[1] with two counts:  1) conspiracy to commit money laundering involving financial transactions in criminally derived property affecting interstate and foreign commerce in violation of 18 U.S.C. § 1956(h), namely interstate shipment of stolen vehicles; and 2) aiding and abetting others in money laundering

---

[1] Seven others were also charged in this fifteen-count Indictment.

involving a financial transaction affecting interstate commerce, to wit, the transfer of a Harley Davidson motorcycle, which he knew was the proceeds of unlawful activity in violation of 18 U.S.C. § 1956(a)(1)(B)(i).[2] (R. 1). In addition, the Indictment included a forfeiture allegation against Defendant. (*Id.*). On December 15, 2011, a federal grand jury returned a Superseding Indictment (R. 157), which contained the above two counts against Chapman and also added a new count against him for tampering with a witness in violation of 18 U.S.C. § 1512(a)(2)(A). Chapman unsuccessfully sought to dismiss the Indictment (R. 402), and on February 7, 2013, pursuant to a written Plea Agreement under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, Chapman pled guilty to conspiracy to commit money laundering (Count One) and the forfeiture allegation. (R. 552). As part of his Plea Agreement, Chapman agreed to the Sentencing Guidelines calculations set forth therein, which calculations concluded that his total offense level was 30, and he also agreed that these calculations would be binding on the District Court upon the Court's acceptance of the Plea Agreement. (R. 662, at 3 ¶ 4).

As part of the Plea Agreement, Defendant expressly agreed to waive both his right to appeal and his right to collaterally attack his guilty plea, conviction, and sentence. (R. 662, at 4 ¶ 5). As a benefit of the Plea Agreement, the United States moved to dismiss Counts Two and Eighteen of the Superseding Indictment, which the Court granted. (R. 662, at 1 ¶ 1; R. 669, R. 670). At the rearraignment hearing, the District Court engaged in a line of questioning to determine Defendant's

---

[2]The Plea Agreement contains a statement of facts, which explains that Defendant, along with others, stole motorcycles at bike rallies, transported them in interstate commerce, replaced parts containing identification numbers, registered them as "kit bikes" or "assembled bikes," and sold them. The Agreement specifically references a transaction resulting in the transfer of a fraudulent title to a stolen 2004 Harley Davidson, which title was obtained by Defendant's representations that the motorcycle was an assembled bike. (R. 662, at 2 ¶ 3). The Plea Agreement also provided that the scheme resulted in a loss of approximately $1,700,000.00. (*Id*. at 3 ¶ 3).

competence and, after being satisfied of his ability to understand and comprehend, continued with the proceeding. (R. 630, at 6-10).

The District Judge informed Defendant that the Plea Agreement contained a waiver of rights, which waiver provided that Defendant would not be able to appeal or collaterally attack his plea, conviction, or his sentence. (*Id*. at 24-25). Defendant acknowledged that he understood the waiver provision. (*Id*. at 21). Counsel also stated he rarely agrees to waive the right to appeal a sentence, but because this was a Rule 11(c)(1)(C) plea, Defendant would be sentenced within the range agreed to in the Agreement if the Agreement were accepted by the Court, and thus no appeal of the sentence would be necessary. (*Id*. at 22). The District Court found Defendant's waiver of his right to appeal and collaterally attack his guilty plea, conviction and sentence was knowing and voluntary. (*Id*. at 25).

The District Court also explained the significance of a Rule(c)(1)(C) plea agreement, and specifically explained to Defendant that if the Court accepted the Agreement, it was bound to sentence him within the range set forth by the Agreement. Defendant stated he understood the binding nature of the Agreement. (*Id*. at 20-23). The District Judge also verified Defendant was satisfied with his counsel and confirmed Defendant understood the rights he was giving up by entering a guilty plea. (*Id*. at 10-11; 18-25). After a complete Rule 11 colloquy, the District Court concluded that Defendant's plea was knowing and voluntary and supported by an independent basis of fact. (*Id*. at 29).

On June 6, 2013, the District Court sentenced Defendant to 120 months, which was consistent with the parties' binding Plea Agreement. (R. 662, at 3-4 ¶ 4; R. 669; R. 670) (total

3

offense level of 30 and criminal history category of I results in a sentencing range of 97 to 121 months). Defendant did not file a direct appeal.

On February 27, 2014, Defendant filed the pending § 2255 Motion to Vacate, Set Aside, or Correct Sentence. (R. 798). Defendant's Motion arguably presents two claims: 1) his Sentencing Guidelines range was incorrectly calculated; and 2) his counsel provided him with ineffective assistance by failing to recognize a mistake in the Plea Agreement regarding the calculation of his Sentencing Guidelines range. (*Id.*).

## II.     ANALYSIS

Under § 2255, a federal prisoner may seek habeas relief on grounds that his conviction or sentence violated the Constitution or laws of the United States, that the court was without jurisdiction to impose the sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. *See* § 2255(a). A § 2255 motion does not have to be founded on constitutional error or even federal law. *Watt v. United States*, 162 F. App'x 486, 502-03 (6th Cir. 2006)). However, to succeed on a § 2255 motion alleging constitutional error, a defendant "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (*citing Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). To obtain relief under § 2255 for a nonconstitutional error, a defendant must establish either a fundamental defect in the criminal proceedings which inherently resulted in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process. *See Riggs v. United States*, 209 F.3d 828, 831 (6th Cir. 2000), *abrogated on other grounds as recognized by Kumar v. United States*, 163 F. App'x 361 (6th

Cir. 2006); *see also Hicks v. United States*, 122 F. App'x 253, 256 (6th Cir. 2005); *McNeal v. United States*, 17 F. App'x 258, 260-61 (6th Cir. 2001).

Therefore, a defendant must allege in his § 2255 motion that: (1) his conviction was the result of an error of constitutional magnitude; (2) his sentence was imposed outside of statutory limits; or (3) there was an error of law or fact so fundamental as to render the proceedings invalid. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (*citing Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). A defendant must prove his allegations by a preponderance of the evidence. *Pough*, 442 F.3d at 964.

A.   **Waiver Bars Any Claim of Sentencing Error**

To the extent Defendant's Motion can be construed as asserting a claim of sentencing error, such claim has been waived by the waiver provision contained in the binding Plea Agreement. (*See* R. 662, at 4 ¶ 5). In his Plea Agreement, Defendant waived his right to appeal and collaterally attack his guilty plea, conviction, and sentence. (*Id*.). A motion brought pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction. Thus, if the waiver is found to be valid, Defendant is precluded by his Agreement from collaterally attacking any issues barred by the waiver.[3]

It is well settled that a defendant may waive any right, including a constitutional right, in a plea agreement provided that the waiver is knowing and voluntary. *Hardin v. United States,* __ F.

---

[3] After the District Court accepted the binding Plea Agreement at sentencing, the Assistant United States Attorney ("AUSA") stated that after the parties executed the Agreement, the Kentucky Supreme Court ruled the use of ineffective assistance of counsel waivers in a plea agreement violates Kentucky Supreme Court Rules of Professional Conduct. *See United States, ex rel, United States Attorneys for the Eastern & Western Districts of Kentucky v. Kentucky Bar Assoc.*, 439 S.W.3d 136 (Ky. 2014). Accordingly, the AUSA and defense counsel explained they were interpreting their Agreement as excepting from the waiver provision a collateral attack based upon ineffective assistance of counsel. (R. 813, at 35-36). As explained herein, the Court is recommending dismissal of Defendant's ineffective assistance of counsel claim on the merits, and therefore the Court will not consider whether the waiver provision contained in the binding Plea Agreement was permitted to be altered by agreement of the parties after the District Court had accepted it. Thus, the Court will only consider what effect the waiver provision has on the claim of sentencing error.

App'x __, 2014 WL 6871588, at *1 (6th Cir. Dec. 8, 2014); *United States v. Swanberg*, 370 F.3d 622, 625 (6th Cir. 2004); *United States v. Fleming*, 239 F.3d 761, 763 (6th Cir. 2001); *United States v. Baxter*, No. 10-1-DLB, 2012 WL 6861260, at *4 (E.D. Ky. Nov. 30, 2012). The Sixth Circuit has specifically held that a defendant's informed and voluntary waiver of the right to collateral attack bars any such relief. *Hardin*, 2014 WL 6871588, at *1; *Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001); *Watson*, 165 F.3d at 488-89. A waiver in a plea agreement is considered knowing and voluntary if a defendant testified that his guilty plea was not coerced and that he reviewed and understood the agreement terms. *Davila*, 258 F.3d at 451.

An exception to the general rule stated above exists if the collateral attack concerns the validity of the waiver itself. *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007); *Baxter*, 2012 WL 6861260, at *4. However, in situations where the § 2255 motion does not articulate a basis for attacking the validity of the waiver, the Sixth Circuit and lower courts within the Sixth Circuit have upheld collateral attack waivers if the waivers were knowing and voluntary. *Watson*, 165 F.3d at 489; *United States v. Eversole*, No. 6:05-cr-64, 2010 WL 420067, at *2, n.3 (E.D. Ky. Feb. 1, 2010) (*citing Short v. United States,* 471 F.3d 686, 697-98 (6th Cir. 2006); *Davila*, 258 F.3d at 451).

In the case at bar, Defendant signed a Plea Agreement that provides in pertinent part:

5.  The Defendant waives the right to appeal and the right to attack collaterally the guilty plea, conviction, and sentence.

(R. 662, at 4 ¶ 5). At Defendant's rearraignment hearing, the District Judge meticulously explained the nature of the waiver provision and verified Defendant understood its import. Specifically, the Court engaged Defendant in the following colloquy:

COURT:  Okay. There's another part of your plea agreement that I want to focus on, and it's paragraph number 5, and I just want to make sure that you don't have any questions. One of the

|               |                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                          |
|---------------|---|
|               | protections you have as a defendant is that the decisions that get made in this Court, you can get a review[] or get a second look at those decisions by a group of appellate judges, three additional judges. You can see how that protects you and gives you a second chance if there's a decision that -- a ruling that's against your interest at the district court level. You can give up that protection. That's called, of course, the right to appeal, and you can waive that right, and that's precisely what you've done at paragraph number 5, which states that you waive your right to appeal and your right to attack collaterally your guilty plea, conviction and sentence. You're waiving all of your appeal rights in that paragraph. Do you recall discussing that with your lawyer Mr. Murphy? |
| DEFENDANT:    | Yes. |
| COURT:        | Did he explain to you the consequence of waiving those appeal rights? |
| DEFENDANT:    | Yes. |
| COURT:        | Mr. Murphy, do you think your client understands the consequence of waiving those rights? |
| MR. MURPHY:   | Yes, Your Honor. I explained to him that I rarely would agree to waive the right to appeal the sentence, but I explained that with this being an 11(c)(1)(C) plea, that the sentence - - if the plea's accepted by the Court, if the plea would be within that range and that we wouldn't have any reason to appeal that, and he accepted that advice and he understands that. |
| COURT:        | Well, based on Mr. Chapman's response to my questions and the information provided by his counsel, I do find that the waiver of his right to appeal and the right to attack collaterally his guilty plea, conviction and sentence is knowing, it's voluntary, and I think the defendant understands the consequence of waiving that right. |

(R. 630, at 24-25). Further, at the conclusion of the sentencing hearing, the District Court notified

Defendant in writing of his appellate rights, and provided Defendant an opportunity to review the

"Court's Advice of Right to Appeal" with his counsel. (R. 813, at 34). The "Court's Advice of

Right to Appeal" specifically provided that Defendant's Plea Agreement waived some or all of his rights to appeal and such waivers are generally enforceable. (R. 661). However, the document further provided that if Defendant thought the waiver of his right to appeal was unenforceable, he could present that theory to the appellate court and explained how to do so. (*Id*.).

The Supreme Court has instructed that "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings," and that "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Defendant admitted he understood the terms of the waiver provision, and nothing in the record suggests otherwise.

In addition, Defendant does not allege counsel failed to fully explain the Plea Agreement or that counsel did not accurately advise him of the waiver's effect. Even if counsel did not explain the waiver, the District Court discussed the waiver provision at length in open court and verified Defendant understood the rights he was waiving by entering into the Agreement. The Prosecutor also pointed out the import of the waiver provision. (R. 630, at 16). Accordingly, the colloquy during the plea hearing would have cured any deficiency by counsel. *United States v. Harding*, No. 6:04-65-DCR, 2008 WL 4073393, at *5 (E.D. Ky. Aug. 29, 2008) (*quoting United States v. Boyd*, No. 3:02-cr-235-H, 2007 WL 900949, at *7 (N.D. Tex. Mar. 23, 2007) ("The information provided to movant at the plea hearing cured any deficiency of counsel regarding the waiver provision.")).

Moreover, Defendant does not challenge the validity of the actual waiver. Nor does Defendant suggest that he did not understand the waiver or that he did not sign it voluntarily. Instead, Defendant's claim is that he was incorrectly sentenced because his Sentencing Guidelines

8

range was mistakenly calculated. (R. 798). This claim does not attack the validity of the waiver itself or challenge the validity of the plea. Instead, the claim is an attack on the sentence. Accordingly, because Defendant is attacking not the validity of the plea itself but rather his sentence, and he expressly waived his right to attack his sentence in the Plea Agreement, any claim of sentencing error is barred by the knowing and voluntary waiver contained in the binding Plea Agreement. *See Davila*, 258 F.3d at 451.

### B.  Ineffective Assistance of Counsel Claim lacks Merit

Defendant asserts his counsel provided ineffective assistance by not double checking the prosecution's Sentencing Guidelines calculations, which resulted in him agreeing to an offense level that was two points higher than it should have been. (R. 798). In his Reply, Defendant further asserts counsel took the plea deal offered without any attempt to negotiate a better deal, and instead talked Defendant into signing a Plea Agreement containing "mistakes, error and untruths."[4] (R. 846).

The Supreme Court has held that '[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To meet this standard, the Court set forth a two-part test. First, a defendant is required to show that counsel's representation fell "below an objective standard of reasonableness." *Id*. at 687-88. In reviewing this prong, the lower court is to apply a deferential standard, i.e. there

---

[4]In his Reply, Defendant also objected to this Court's finding a limited waiver of his attorney-client privilege, arguing that he was in transit and could not timely respond to the Government's Motion. As the Court explained in its Order finding a limited waiver, by raising his ineffective assistance of counsel claim, he impliedly waived his attorney-client privilege with respect to the issues raised by his claim. *See In re Lott*, 424 F.3d 446, 453 (6th Cir. 2005); *United States v. Lee*, No. 10-66, 2012 WL 4853066, at *1 (E.D. Ky. Oct. 11, 2012).

is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. If a defendant satisfies the first prong, he must also establish that counsel's deficient performance prejudiced him. *Id*. at 691-94. Specifically, he must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Defendant must establish both prongs by a preponderance of the evidence. *Pough*, 442 F.3d at 964. Thus, an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error did not affect the judgment. *Id.* at 691.

In the guilty plea context, where a defendant is represented by counsel and enters a guilty plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (*quoting McMann v. Richardson*, 397 U.S. 759, 771 (1970)). While the performance prong of the *Strickland* test remains the same, to establish prejudice the Defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003) (*quoting Hill*, 474 U.S. at 58-59). Both prongs of the test must be met for a finding of ineffective assistance, but courts are not required to conduct an analysis under both; if the court finds a defendant cannot meet one prong, it need not address the second prong. *Strickland*, 466 U.S. at 697.

In this case, Chapman argues the Plea Agreement provides an incorrect calculation of his sentencing range because his counsel failed to check the prosecution's calculations and failed to consult the 2008 Federal Sentencing Guidelines. Defendant contends that had counsel consulted the

2008 Guidelines, counsel would have discovered that the base offense level should have been a 6 and not an 8. Defendant has not established counsel's conduct was deficient in this regard. The Court's comparison of the 2008 and 2012 Sentencing Guidelines Manuals reveals there are no substantive differences in the 2008 and 2012 Sentencing Guidelines for crimes involving money laundering under the specific Sentencing Guidelines applicable here. (*See* U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2S1.1; § 2B1.1; § 2B6.1).

Instead, it appears Defendant may be referring to the two-point difference between the Probation Office's finding, reflected in the Presentence Investigation Report ("PSR"), that the appropriate starting point in determining Defendant's base offense level was 6 and the parties' statement in the Plea Agreement that the starting point was 8. (*Compare* PSR, at 11 n.2 *and* R. 662, at 3 ¶ 4(c)). Even assuming Defendant intended to argue counsel was ineffective for failing to insist that the parties use a different Sentencing Guideline in calculating the appropriate offense level, as explained below, Defendant cannot establish he suffered prejudice.

The starting point for determining the appropriate Sentencing Guidelines range for money laundering offenses under 18 U.S.C. § 1956(h), to which Defendant pled guilty, is § 2S1.1(a)(1) of the Sentencing Guidelines. This section provides the base offense level shall be that for the underlying offense from which the laundered funds were derived, so long as the "level for that offense can be determined." U.S.S.G. § 2S1.1(a)(1). In applying this section, the Probation Office used a different section of the Sentencing Guidelines to calculate the base offense level "for the underlying offense from which the laundered funds were derived" than the parties used in their calculations. While the parties agreed in their Plea Agreement to use § 2B6.1 of the Sentencing Guidelines to determine the base offense level because it applies to underlying offenses involving

the altering or removing of motor vehicle identification numbers or trafficking in motor vehicles, the Probation Office used § 2B1.1 because the underlying offense involved the interstate shipment of stolen motor vehicles. (R. 662, at 3 ¶ 4; PSR, at 11 n.2). The District Court ultimately determined that the Probation Office's calculations were correct.[5] (*See* R. 813, at 6). Nevertheless, even assuming defense counsel should have known that § 2B1.1 was the appropriate Guideline to calculate his offense level in the Plea Agreement, Defendant cannot establish prejudice because the calculations under this section result in a higher offense level than the District Court ultimately used to sentence him.

Specifically, after determining the appropriate base offense level under § 2B1.1(a), here a 6, a court is required to continue its analysis under this section by reviewing the specific offense characteristics set forth in § 2B1.1(b) and apply any appropriate enhancements. The Probation Office determined that a 16-level enhancement applied because the loss exceeded one million dollars. *See* U.S.S.G. § 2B1.1(b)(1)(I). In addition, the Probation Office also applied a 4-level enhancement because the underlying crime involved 50 but less than 250 victims. *See* U.S.S.G. § 2B1.1(b)(2)(B). Finally, the Probation Office found applicable a two-level enhancement for offenses involving an organized scheme to steal vehicles. *See* U.S.S.G. § 2B1.1(b)(13)(A). After the Probation Office performed the required analysis under § 2B1.1, it calculated Defendant's base offense level to be a 28. After application of additional enhancements under other sections of the Sentencing Guidelines and a three-level reduction for timely acceptance of responsibility, the Probation Office concluded

---

[5]"Judges 'determine' the offense level for the underlying offense [in § 2S1.1(a)(1)] by looking to Appendix A of the Guidelines." *United States v. Hanna*, 661 F.3d 271, 289 (6th Cir. 2011). Here, Count One of the Superseding Indictment charged Defendant with conspiracy to engage in financial transactions involving proceeds of interstate shipments of stolen vehicles (*see* R. 157-1), a violation of 18 U.S.C. § 2312, which Appendix A provides has a corresponding Guideline of § 2B1.1.

Defendant's calculated total offense level to be 32. Thus, although the starting base offense level under § 2B1.1 is two levels lower than the starting base offense level of § 2B6.1 that was used by the parties, the total agreed upon offense level of 30 contained in the Plea Agreement was ultimately 2 points lower than the Probation Office's calculated total offense level under § 2B1.1. Therefore, even if counsel's performance could somehow be deemed deficient in agreeing to use § 2B6.1 to calculate the base offense level in the binding Plea Agreement, Defendant was not prejudiced by counsel's failure. Instead, Defendant benefitted from the parties' agreement to use § 2B6.1 and not § 2B1.1 in calculating the appropriate sentencing range, as it resulted in a two-level decrease in his calculated total offense level.

A lack of any prejudice to Defendant for this error is further illustrated by statements made by the presiding District Judge during sentencing. Specifically, the Court stated:

> the Court [has had to] wrestle with this a little bit because under our sentencing system, I'm being bound to a sentencing range that somewhat underrepresents the full impact of what our system suggests [ought] to be the sentence here because the presentence investigation report suggests a level 32, Category I, which is 121 months on the low end up to 151 months, and then we're, of course, bound by approving this, I'm bound with 97 to 121 months with an offense level of 30. So it suggests in this agreement that the offense is somewhat less serious than it actually is. That's really the impact of a PSR that's not objected to. That's the actual reflection of how serious this is.
>
> But for a number of reasons and given the arguments that I've considered, I'm willing to be bound by this and think that I can fulfill my responsibilities under the sentencing laws and rules by agreeing to be bound. . . .

(*see* R. 813, at 18-19). Thus, the District Court recognized that the agreed-upon Sentencing Guidelines range was two levels below the proper calculation, but ultimately accepted the binding Plea Agreement and sentenced Defendant within the agreed-upon range. Accordingly, Defendant cannot establish prejudice by counsel's agreement to use of § 2B6.1 as the applicable Sentencing

13

Guideline in determining the appropriate base offense level under § 2S1.1(a)(1) because it resulted in a lower total offense level than the District Court found was the correct calculation in his case. (*See* R. 813, at 6).

Similarly, Defendant's statements in his Reply that counsel did not attempt to negotiate with the Government by arguing for any departures or trying to reduce the amount of loss attributable to him do not establish counsel provided ineffective assistance. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 690. While Defendant makes a general statement that his counsel did not attempt to argue for any departures, Defendant does not demonstrate, or even argue, that a valid basis existed for further departures and he does not articulate what departures he believes were applicable.[6] Nor has Defendant demonstrated the amount of loss attributed to him was incorrect. Instead, Defendant simply states no other defendant was charged with this amount of loss[7] and the amount attributed to him is a "gross error" without any explanation of what he thinks is the

---

[6]The evidence establishes counsel was successful in negotiating a lower sentencing level than the Government originally sought. Specifically, defense counsel stated, in his Affidavit, that the original proposed Plea Agreement contained a calculated total offense level of 31. (R. 828-7, at 2). In response to the Government's proposal, counsel proposed changes to the proposed Agreement, including a one-point reduction in the enhancement for aggravating role, which the Government ultimately agreed to accept. (*Id*.). Counsel stated he reviewed the proposal with Defendant and explained the negotiations. (*Id*.). Counsel further stated Defendant told him that if the United States would agree to the changes counsel suggested, he would accept the deal. (*Id*.). Thus, the evidence of record demonstrates Defendant was involved in the process of plea negotiations and belies his argument that counsel made no effort to negotiate more favorable terms.

[7]The Court's review of the record reveals this is an inaccurate statement. The plea agreement of Defendant's wife, co-Defendant Christina Bannigan, indicates that she was also subject to the 16-level enhancement under Guideline § 2B1.1 for the value of the loss being over one million dollars. (R. 665, at 3 ¶ 5).

proper calculation. (R. 846, 861). Thus, Defendant has not provided any evidence that his attorney performed below an objective standard of reasonableness.

Further, Defendant told the Court prior to entering his guilty plea that he had ample time to discuss his case with counsel and that he was satisfied with the advice and representation his counsel had provided him. (R. 630, at 10-11). If Defendant thought counsel had not sufficiently negotiated the Plea Agreement or that it contained inaccurate information, he had ample opportunity to notify the Court of this during his Rearraignment. Instead, Defendant confirmed that the AUSA's recital of the Agreement, including the amount of loss, was accurate.[8] (R. 630, at 15-18, 27). "[W]here the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry." *Blackledge*, 431 U.S. at 74 ("[s]olemn declarations in open court carry a strong presumption of verity").

Moreover, Defendant has failed to establish the prejudice prong as to any of his allegations of ineffective assistance of counsel because he has not asserted in his Motion that but for the alleged errors of counsel, he would not have pled guilty and would have insisted on going to trial. *See Hill*, 474 U.S. at 58-59. This failure is fatal to Defendant's ineffective assistance claim; such an assertion is required to properly allege a claim of ineffective assistance of counsel in the context of a defendant's decision to plead guilty. *See Hill*, 474 U.S. at 60. Accordingly, Defendant has not established counsel was deficient in negotiating the Plea Agreement or that he suffered prejudice.

---

[8] The Court specifically asked Defendant whether the facts contained in paragraph 3 of the Plea Agreement were true, which includes the statement that the amount of loss was approximately $1,700,000.00, and Defendant responded "yes." (R. 630, at 27; R. 662, at 3 ¶ 3).

15

### C. No Evidentiary Hearing is Required

Defendant has requested an evidentiary hearing in this matter. (R. 861). An evidentiary hearing is not necessary in this case because there are no genuine issues of material fact in dispute and the record conclusively shows that Defendant is not entitled to relief under 28 U.S.C. § 2255. *Amr v. United States*, 280 F. App'x 480, 485 (6th Cir. 2008); *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir.1999) (no hearing is required if the motion's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact") (*quoting Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)).

### III. CERTIFICATE OF APPEALABILITY

Under Rule 11 of the Federal Rules Governing Section 2255 Proceedings, the district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant. A certificate may issue only if a defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought under § 2255). In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial

of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists would not debate the denial of Defendant's § 2255 motion or conclude that the issues presented are adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack*, 529 U.S. at 484). Accordingly, it will further be herein **recommended** that a certificate of appealability be **denied** upon the District Court's entry of its final order in this matter.

## IV. CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that:

(1) Defendant Robert Jason Chapman's Motion to Vacate, Set Aside, or Correct a Sentence under 28 U.S.C. § 2255 (R. 798) be **denied;**

(2) a Certificate of Appealability be **denied** by the District Court in conjunction with the Court's entry of its final order in this matter;

(3) Judgment in favor of the United States be entered contemporaneously with the District Court's entry of its final order; and,

(4) this action be **stricken** from the active docket of this Court.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 8(b). Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the

statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Walters,* 638 F.2d 947, 950 (6th Cir. 1981).

Dated this 27th day of February, 2015.

Signed By:
*Candace J. Smith*
**United States Magistrate Judge**

G:\DATA\habeas petitions\2255 R&R general\11-51 Chapman R&R final.wpd